# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | |
|---|---|
| **SAMUEL PENSON, individually and as a representative of the Classes,** | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | **Civil Action No.:** ) ) |
| **FALCON AVIATION ACADEMY, LLC** | ) ) ) ) |
| Defendant. | ) ) ) |

## PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL

Now comes the Plaintiff, SAMUEL PENSON (hereinafter "Plaintiff" or "PENSON"), on behalf of himself and the Classes set forth below, and in the public interest, by and through undersigned counsel, and brings this Class Action Complaint against the Defendant, FALCON AVIATION ACADEMY, LLC (hereinafter "Defendant" or "FAA") and states as follows:

## NATURE OF THE CLAIMS

1. This putative class action is brought against Defendant, pursuant to damages for violations of the Fair Credit Reporting Act ("FCRA") (15 U.S.C. §1681 *et. seq.*) and for costs and attorney's fees. Defendants routinely violated FCRA's core protections by:

   a. procuring background checks on employees and job applicants without making a legally required stand-alone disclosure or receiving written authorization as required by 15 U.S.C. § 1681b(b)(2); and

1

      b.  failing to provide employees and job applicants with pre-adverse action notice and a copy of the consumer report prior to taking adverse action against them as required by 15 U.S.C. § 1681b(b)(3).

2. Defendant's violations were committed pursuant to FAA's internal policies and procedures regarding screening job applicants and employees. Accordingly, Plaintiff seeks to represent those similarly situated, and seeks statutory damages, punitive damages, attorneys' fees, costs and all other relief available under the FCRA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1313 and 15 U.S.C. §1681p, as this action involves federal questions regarding Plaintiff's rights under the FCRA.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), because all Defendants reside in the Northern District of Georgia and because a substantial part of the events or omissions giving rise to this action, alleged herein occurred in this district.

## PARTIES

5. Plaintiff, PENSON, is a natural person, citizen of the United States, and is and was at all times material, a resident of the State of Georgia. PENSON is a "consumer" within the meaning of 15 U.S.C. §1681a(c).

6. Defendant, FAA, a Georgia domestic limited liability company, is subject to the Court's personal jurisdiction because it is authorized to and does conduct substantial and regular business activities in the Northern District of Georgia, including Coweta County where it has its principal place of business (in Newnan). Accordingly, pursuant to 28 U.S.C. 1391 (c)(2) and (d), FAA resides in the Northern District of Georgia.

**STATUTORY BACKGROUND**

7. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job; and second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

8. To safeguard that consumers are aware that reports are being generated about them, and to give consumers opportunities to review the reports and contest inaccuracies and illegalities in the report, Congress established a notification and disclosure regime. Many of these notices and disclosures are specifically designed to govern job applicants and employees whose employers perform background screening on potential job applicants and employees. As discussed below, Defendants routinely violated these basic FCRA requirements.

**I.  FCRA Requirements**

**a.  Stand-Alone Disclosure and Written Authorization**

9. Congress was particularly concerned about the use of consumer reports by employers to deny otherwise qualified job applicants or to take other adverse actions against employees. Accordingly, Congress required that before any consumer report was procured for employment purposes:

- "a clear and conspicuous written disclosure must be made to the consumer, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes"; and

- "that the consumer must give 'written authorization.'"

15 U.S.C. § 1681b(b)(2). These requirements are commonly referred to as the "stand-alone disclosure requirement" and the "written authorization requirement," respectively.

10. Defendant routinely and systematically violated these FCRA protections by failing to provide a stand-alone disclosure informing employees and job applicants that consumer reports about them were being procured, and by failing to obtain written authorization before obtaining the reports.

### b. Pre-Adverse Action Notification

11. The FCRA requires that any person who uses a report for employment purposes must:

> before taking any adverse action based in whole or in part on the report…provide to the consumer to whom the report relates—
>
> > a) a copy of the report; and
> >
> > b) a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3).

15 U.S.C. § 1681b(b)(3).

12. The FCRA defines adverse action both as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee" and as "any action taken or determination that is… adverse to the interests of the consumer." See 15 U.S.C. §§ 1681(a)(k)(1)(B)(ii) and 1681a(k)(1)(B)(iv)(II).

### c.   Adverse Action Notification

13. The FCRA requires that any person who procures a report on the consumer for employment purposes and takes adverse action on the employment application of the consumer based in whole or in part on the report, must provide to the consumer to whom the report relates notification:

> > a) that adverse action has been taken in whole or in part on a consumer report received from a consumer reporting agency;

>   b) of the name, address and telephone number of the consumer reporting agency that furnished the consumer report;
>
>   c) that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and
>
>   d) that the consumer may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report.

15 U.S.C. § 1681b(b)(3)(B)(i).

## FACTS

14. In 1999, Falcon Aviation Academy began as Griffin Flight School and one year later, moved and acquired Peachtree Flight Center at the Peachtree City / Falcon Field Airport.

15. In 2006, FAA began expanding and opened a satellite location at Dekalb-Peachtree airport, followed by locations at Athens-Ben Epps airport and LaGrange airport.

16. In 2009, FAA opened its primary training hub at the Newnan-Coweta airport and purports to be one of the largest aviation training facilities

17. Upon information and belief, PENSON submitted a job application through Indeed.com for an Inventory Control Specialist with FAA.

18. On or about October 2, 2018, PENSON interviewed for the position of Inventory Control Specialist with FAA by FAA's Controller, Michele Peacock.

19. On or about October 4, 2018, Michele Peacock called PENSON and offered him the full-time position of Inventory Control Specialist, at a starting hourly wage of $15.00 per hour.

20. PENSON's position as a full-time Inventory Control Specialist would have entitled him to benefits including: health, vision, dental, 401k and performance review bonuses, after ninety (90) days.

21. PENSON's job duties, as an Inventory Control Specialist, included (but were not limited to) maintaining inventory, entering data for supplies and parts pursuant to work orders and controlling supplies and parts for distribution to technicians.

22. On or about October 8, 2018, PENSON attended orientation and was formally considered to be an "active" employee. PENSON's orientation consisted of classroom presentations and demonstrations on the proper handling of dangerous chemicals, sexual harassment training and general harassment training videos and compliance with regard to FAA's employee handbook.

23. At the time of his orientation, PENSON filled out a two page (front and back) physical application for employment which included, embedded within, an authorization to perform a background check. PENSON believed the requirement of the physical application for employment to be a mere formality and ancillary to his prior application.

24. Upon information and belief, PENSON was not provided a clear and conspicuous disclosure and request for authorization in a standalone document that consisted solely of the disclosure and request for authorization to obtain PENSON's background check for employment purposes.

25. Upon information and belief, PENSON never signed an authorization to obtain his background check for employment.

26. On October 18, 2018, FAA obtained PENSON's background check, hereinafter referred to as the "October 18, 2018 Background Report."

27. On October 22, 2018, PENSON received notice of the October 18, 2018 background check via electronic mail from Trak-1 Technology, a background screening firm that performs employment background investigations, advising him of his rights and providing him with a copy of the October 18, 2018 Background Report. (See October 22, 2018 notice of background check and the first two (2) pages of PENSON's October 18, 2018 Background Report attached as Composite Exhibit 1).[1]

28. The October 18, 2018 Background Report is a "consumer report" within the meaning of 15 U.S.C. §1681a(d) and §1681b(a)(3)(F)(i) in that it was:

> written…communication of any information by a consumer reporting agency bearing on a consumer's character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility… (C) …in connection with a business transaction that was initiated by [PENSON].

29. Trak-1 Technology included a "compliance notice" on the coversheet of PENSON's October 18, 2018 Background Report for employers which read:

> Before taking an adverse action against the person named in this report you must provide him or her with a first pre-adverse action notice, a copy of this report, and a copy of "A Summary of Your Rights Under the Fair Credit Reporting Act." You should provide the person a reasonable amount of time to respond to your notice. If after hearing the individual's response you determine to continue with the adverse action you must provide a second post-adverse action notice. You must provide notice even if the information in the report plays only a small part in the overall decision. Additional notice requirements may apply in certain states. Trak-1 provides you with the content and format of these required notices in the addendums to your Customer Service Agreement or at http://www.trak-1.com/AdverseAction.

30. PENSON's October 18, 2018 Background Report outlined four (4) misdemeanor offenses unrelated to PENSON's job responsibilities and/or employment with FAA.

---

[1] Due to the private, personal and sensitive information contained within Plaintiff's October 18, 2018 Background Report, only the first two pages have been attached at this time.

7

31. Upon completion of his orientation, PENSON satisfactorily performed the duties of his position for over two (2) weeks and worked diligently in an effort to establish himself within FAA's workforce.

32. At the time of his orientation, PENSON mistakenly neglected to complete and fill out the reverse side of FAA's physical application for employment and on October 24, 2018, PENSON was approached by FAA's Shop Manager, Mike F. (LNU) and was asked to complete the remaining portions of FAA's physical application.

33. The remaining portion of FAA's physical application for employment questioned PENSON as to whether he had "…committed a felony," to which PENSON replied in the negative. Notably, FAA's physical application for employment did not ask PENSON if he had been arrested and did not provide PENSON an opportunity and/or space to provide any details about his criminal background, if any.

34. At that time, despite FAA having received PENSON's background report, PENSON was never informed of any issues associated with his background report and was never placed on notice of any deficiencies and/or discrepancies.

35. The very next day, on October 25, 2018, PENSON was approached by Mike F. and escorted into an office wherein FAA's Human Resources Manager, Jennifer Reid and Michele Peacock awaited. Upon entering the office, PENSON was informed that he was being terminated and was provided a piece of paper stating that his employment was being terminated because of "Background check"; however, the paper failed to allude to any specifics and/or justification relied upon in reaching such determination. (See Separation Notice attached as Exhibit 2).

36. At the time of his termination, Jennifer Reid explained that his termination was a result of his background check and specifically referenced his prior DUI misdemeanor offense. PENSON explained that the DUI misdemeanor was over nine (9) years old and had no relation and/or bearing on his job responsibilities as an Inventory Control Specialist with FAA.

37. Mike F. questioned PENSON as to why he "…did not disclose this [DUI] to [them] first," to which PENSON stated that FAA's application did not provide him an opportunity and only asked him whether he had been convicted of a felony.

38. PENSON was never provided a preliminary notice of adverse action based on the October 18, 2018 Background Report, was never provided a copy of the October 18, 2018 Background Report by FAA and was never advised of his rights under the FCRA to dispute the accuracy of the information provided therein.

39. PENSON has been damaged by FAA's illegal conduct.

40. PENSON has retained the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

41. PENSON asserts Count I and Count II against FAA on behalf of the "Improper Disclosure Class" defined as follows:

> **Improper Disclosure Class**: All FAA employees and job applicants in the United States who were the subject of a consumer report that was procured by FAA within five years of the filing of this complaint through the date of final judgment in this action.

42. PENSON asserts Count III against FAA on behalf of the "Adverse Action Notice Class" defined as follows:

> **Adverse Action Notice Class**: All FAA employees and job applicants against whom adverse employment action was taken based, in whole or in part, on information contained in a consumer

9

report generated within five years of the filing of this complaint through the date of final judgment in this action.

43. <u>Numerosity</u>: The Classes are so numerous that joinder of all Class numbers is impracticable. FAA regularly obtains and uses information in consumer reports to evaluate employees and job applicants, and FAA frequently relies on such information, in whole or in part, as a basis for taking adverse employment action.

44. <u>Typicality</u>: PENSON's claims are typical of the Class members' claims. The FCRA violations suffered by PENSON are typical of those suffered by other Class members, and FAA treated PENSON consistent with other Class members in accordance with their standard policies and practices.

45. <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

   a. Whether FAA violated the FCRA by procuring consumer reports without providing the proper disclosure;

   b. Whether FAA violated the FCRA by taking adverse action against its employees and job applicants on the basis of information in a consumer report without providing pre-adverse action notice;

   c. Whether FAA's violations were willful;

   d. The proper measure of statutory and punitive damages; and

   e. The proper form of declaratory relief.

46. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. FAA's conduct described in this complaint

stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and PENSON is unaware of any similar claims brought against Defendant by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgment concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

47. The names and addresses of the Class members are available from Defendant's records.

## COUNT I

### FAA's Violation of 15 U.S.C. §1681b(b)(2)(A)(i)
### Asserted on Behalf of PENSON and the Improper Disclosure Class

48. PENSON re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-46, above.

49. Upon information and belief, FAA has violated the FCRA by procuring consumer reports on PENSON and the other Improper Disclosure Class members without first making proper disclosure in the format required by the FCRA. See 15 U.S.C. § 1681b(b)(2)(A)(i).

50. FAA acted willfully and/or negligently and in deliberate or reckless disregard of its obligations and the rights of PENSON and the other Improper Disclosure Class members.

51. FAA's willful conduct is reflected by, *inter alia*, the following:

   a. The FCRA was enacted in 1970; FAA has had since its inception in 1999 to become compliant;

    b. FAA has access to legal advice through its own general counsel and/or outside employment counsel. Yet there is no contemporaneous evidence that it determined that its conduct was lawful;

    c. FAA's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    d. Despite the plain statutory text and there being a depth of guidance available, FAA has adopted a policy of obtaining consumer reports of its employees and job applicants without making the required disclosure and/or obtaining proper authorization. By adopting this policy, FAA voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

    e. FAA contracted with Trak-1 Technology to obtain consumer reports of its employees and job applicants and disregarded any guidance or compliance notices from Trak-1 Technology regarding disclosure and authorization.

52. PENSON and the Improper Disclosure Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

53. PENSON and the Improper Disclosure Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

54. PENSON and the Improper Disclosure Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**WHEREFORE**, pursuant to 15 U.S.C. §§1681n and o, PENSON and the Improper Disclosure Class demand entry of judgment against FAA for damages including exemplary and/or punitive damages, costs, pre and post interest, and attorney's fees and such other relief as the court may deem necessary and appropriate

.

## COUNT II

### FAA's Violation of 15 U.S.C. §1681b(b)(2)(A)(ii)
### Asserted on behalf of PENSON and the Improper Disclosure Class

55. PENSON re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-46, above.

56. Upon information and belief, FAA has violated the FCRA by procuring consumer reports relating to PENSON and other Improper Disclosure Class members without obtaining proper authorization as required by the FCRA. See 15 U.S.C. § 1681b(b)(2)(A)(ii).

57. FAA acted willfully and in deliberate or reckless disregard of its obligations and the rights of PENSON and other Improper Disclosure Class members.

58. FAA's willful conduct is reflect by, *inter alia*, the following:

   a. The FCRA was enacted in 1970; FAA has had since its inception in 1999 to become compliant;

   b. FAA has access to legal advice through its own general counsel and/or outside employment counsel. Yet there is no contemporaneous evidence that it determine that its conduct was lawful;

   c. FAA's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation and the plain language of the statute;

   d. Despite the plain statutory text and there being a depth of guidance available, FAA has adopted a policy of obtaining consumer reports of its employees and job applicants without making the required disclosure and/or obtaining proper authorization. By adopting this policy, FAA voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

   e. FAA contracted with Trak-1 Technology to obtain consumer reports of its employees and job applicants and disregarded any guidance or compliance notices from Trak-1 Technology regarding disclosure and authorization.

13

59. PENSON and the Improper Disclosure Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

60. PENSON and the Improper Disclosure Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

61. PENSON and the Improper Disclosure Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**WHEREFORE**, pursuant to 15 U.S.C. §§1681n and o, PENSON and the Improper Disclosure Class demand entry of judgment against FAA for damages including exemplary and/or punitive damages, costs, pre and post interest, and attorney's fees and such other relief as the court may deem necessary and appropriate.

## COUNT III

### FAA's Violation of 15 U.S.C. §1681b(b)(3)
### Asserted on behalf of PENSON and the Adverse Action Notice Class

62. PENSON re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-46, above.

63. FAA has violated the FCRA by taking adverse action against PENSON and the other Adverse Action Notice Class members based, in whole or in part, on consumer report information without providing proper notice. See 15 U.S.C. § 1681b(b)(3).

64. FAA acted willfully and in deliberate or reckless disregard of its obligations and the rights of PENSON and the other Adverse Action Notice Class members.

65. FAA's willful conduct is reflected by, *inter alia*, the following:

    a. The FCRA was enacted in 1970; FAA has had since its inception in 1999 to become compliant;

    b. FAA has access to legal advice through its own general counsel and/or outside employment counsel. Yet there is no contemporaneous evidence that it determined that its conduct was lawful;

    c. FAA's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    d. FAA was placed on notice of its duty to comply with the requirements of the statute by Trak-1 Technology;

    e. Despite the plain statutory text and there being a depth of guidance available, FAA has adopted a policy of taking adverse action against its employees and job applicants without giving them proper notice. By adopting this policy, FAA voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

66. PENSON and the Adverse Action Notice Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. §1681n(a)(1)(A).

67. PENSON and the Adverse Action Notice Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

68. PENSON and the Adverse Action Notice Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

69. Individually, FAA's violations of 15 U.S.C. §1681b(b)(3) have caused great and irreparable injury to PENSON. PENSON has suffered damages including, but not limited to, loss of employment and wages and benefits, lost economic opportunities and positions and advances in the future, damage to his reputation, humiliation, physical pain and suffering, emotional distress, lasting psychological damage, mental anguish, loss of capacity for enjoyment of life, embarrassment, and other losses that are continuing in nature.

**WHEREFORE**, pursuant to 15 U.S.C. §§1681n and o, PENSON demands entry of judgment against FAA for damages including exemplary and/or punitive damages, costs, pre and post interest, and attorney's fees and such other relief as the court may deem necessary and appropriate.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Classes hereby request a trial by jury on all triable issues herein.

Respectfully Submitted:

*/s/ Gabrielle Klepper*
Gabrielle Klepper
Georgia Bar No.: 341618
**Spielberger Law Group**
202 S. Hoover Blvd.
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
Gabrielle.klepper@spielbergerlawgroup.com
*Attorneys for Plaintiff*